

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DILLON SMELSER, individually, and DERRICK SMELSER, individually, | No. 73964-6-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JEANNE PAUL, individually, and RONALD SMELSER, individually, | |
| Respondents. | FILED: April 4, 2016 |

APPELWICK, J. — Dillon and Derrick Smelser argue the trial court erred in permitting the jury to consider Paul's defense that the automobile-pedestrian accident was unavoidable. They argue the trial court erroneously applied RCW 4.22.070 to the fact of Ronald Smelser's parental immunity when it entered judgment against Paul severally rather than jointly. We affirm.

## FACTS

On April 16, 1998, Jeanne Paul visited Ronald Smelser at his house in Orting. Ronald's[1] two young boys, Dillon and Derrick, were playing in a field that

---

[1] We refer to members of the Smelser family by their first names for clarity. No disrespect is intended.

wrapped around part of the house. At the time, Dillon was five years old and Derrick was two years old.

When Paul got in her truck to leave, she backed up her truck a few truck lengths before turning to go forward out of the driveway. As she started to drive forward, Paul heard a "thunk" noise. She had hit Derrick. He was underneath the truck. Ronald pulled him out, and Derrick was bleeding profusely from his head. Ronald immediately sought medical care for Derrick.

Dillon and Derrick sued Paul in 2011. They argued that Paul breached her duty to exercise reasonable care in operating her vehicle, and as a result caused Derrick's physical injuries and Dillon's emotional injuries. Paul responded to the complaint. As an affirmative defense, Paul argued that Ronald caused Dillon's and Derrick's injuries. Paul sought to have fault allocated amongst all entities who caused the injuries, including Ronald.

Dillon and Derrick moved for partial summary judgment. They contended that the trier of fact could not allocate fault to Ronald, because he had parental immunity. The trial court denied this motion, ruling that the trier of fact would determine Ronald's percentage of fault, because he was a potential nonparty at fault. The court further determined that any amount of fault attributable to Ronald would be reduced from the verdict.

Consequently, Dillon and Derrick added Ronald as a party. But, their amended complaint did not allege that Ronald was responsible for their injuries.

2

The case proceeded to trial. At the close of the evidence, Dillon and Derrick moved for judgment as a matter of law. They asserted that Ronald must be dismissed from the case, because he did not act negligently. The trial court denied the motion, ruling that under RCW 4.22.070, the trier of fact must allocate fault amongst all entities who may have caused the accident.

The jury found that both Paul and Ronald were negligent. It found that the negligence of each was a proximate cause of Derrick's injuries. But, it found that neither defendant's negligence was a proximate cause of Dillon's injuries. The jury found that Derrick's general damages were $16,000, in addition to $14,225.40 in undisputed expenses. The jury allocated fault between Paul and Ronald on a 50/50 basis. But, the trial court entered judgment against only Paul, in the amount of $15,112.70 plus costs. Dillon and Derrick appeal.

## DISCUSSION

I. Application of RCW 4.22.070

Dillon and Derrick assert that the trial court misinterpreted RCW 4.22.070 and incorrectly permitted the jury to allocate fault to Ronald despite his parental immunity. And, they contend that once the court submitted the issue of Ronald's fault to the jury, the court erred by not entering judgment joint and severally.

Washington's tort reform statute has abolished joint and several liability, except in limited situations, replacing it with proportionate liability. See RCW 4.22.070; Mailloux v. State Farm Mut. Auto. Ins. Co., 76 Wn. App. 507, 511-12, 887 P.2d 449 (1995). The proportionate liability scheme requires the trier of fact to allocate the percentage of fault attributable to multiple entities responsible for

the plaintiff's injuries. RCW 4.22.070(1). The statute lists entities whose fault shall be determined, including, "entities immune from liability to the claimant, but shall not include those entities immune from liability to the claimant under Title 51 RCW."[2] Id. But, judgment shall not be entered against an entity that is immune from liability to the claimant. Id. Fault, for purposes of this statutory scheme, is defined as "acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others." RCW 4.22.015.

RCW 4.22.070(1) plainly does not provide an exception for parental immunity. It requires the trier of fact to determine the percentage of fault attributable to every entity that caused the plaintiff's injuries. Id. Fault must be allocated to such an entity, regardless of whether it is a defendant, third party defendant, entity released by the plaintiff, or an entity immune from liability to the plaintiff. RCW 4.22.070(1). RCW 4.22.070(1) provides a single exception: entities immune from liability under Title 51 RCW. Under the expressio unius est exclusio alterius canon of statutory construction, the expression of one item in a category implies that other items are excluded. Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 571, 980 P.2d 1234 (1999). Had the legislature envisioned an exception for entities with parental immunity, it would have included such an exception in RCW 4.22.070(1).

Previous courts have clarified the meaning of this statutory scheme. In Price v. Kitsap Transit, 125 Wn.2d 456, 464, 886 P.2d 556 (1994), the court held

---

[2] Title 51 RCW is Washington's workers' compensation statute.

4

that a four year old child is not an "entity" to which fault can be allocated under RCW 4.22.070(1). Considering the definition of fault in RCW 4.22.015, the court determined that an entity "must be a juridical being capable of fault." Id. at 461. Because children under the age of six lack the mental capacity to be negligent, a four year old child cannot be considered an "entity" for purposes of RCW 4.22.070(1). Id. at 461-62. In reaching this holding, the court explicitly distinguished the concepts of incapacity and immunity. Id. at 462-63. An immune entity is capable of fault but has been excused from liability for policy reasons, but a child is mentally incapable of fault. Id. at 463. Therefore, fault could not be allocated to either of the injured children here. However, no case has held that parents are not juridical beings or entities for purposes of allocating fault under RCW 4.22.070(1) because of parental immunity.

Dillon and Derrick assert that parents entitled to parental immunity are not entities to which fault can be allocated under RCW 4.22.070. They contend that parental immunity is different from other immunities. They argue that parental immunity is not an "immunity" at all, but rather a recognition that there is no duty to supervise one's children. And, they assert that an entity that does not breach a duty cannot be at fault under RCW 4.22.015.

We disagree with Dillon and Derrick's interpretation of parental immunity. Recently, the Washington Supreme Court reaffirmed its earlier holding in Jenkins v. Snohomish County Public Utility District No. 1, 105 Wn.2d 99, 713 P.2d 79 (1986) that parents are immune from liability to their children for negligent

5

supervision, but not for willful or wanton misconduct. Zellmer v. Zellmer, 164 Wn.2d 147, 161, 188 P.3d 497 (2008). The Jenkins court stated,

> Washington has continued to follow the rule of parental immunity where the parent may have been negligent but was not engaged in willful misconduct. . . .
>
> . . . .
>
> There is, however, a point at which parental neglect properly becomes a matter of public concern. With this in mind, our rule remains that where parental negligence rises to the level of willful or wanton misconduct, the doctrine of parental immunity will not preclude liability. Willful and wanton misconduct falls between simple negligence and intentional tort. It is sufficient that the actor "know, or has reason to know, of circumstances which would bring home to the realization of the ordinary reasonable [person] the highly dangerous character of his conduct."

105 Wn.2d at 105-06 (alteration in original) (quoting Foldi v Jeffries, 93 N.J. 533, 549-50, 461 A.2d 1145 (1983)). The Zellmer court describes this rule as limiting "the scope of conduct protected by the parental immunity doctrine." 164 Wn.2d at 163.

When a child injures a third party as a result of his parent's negligent failure to supervise, the parent may be liable to the third party. See Eldredge v. Kamp Kachess Youth Servs., Inc., 90 Wn.2d 402, 408, 583 P.2d 626 (1978); Carey v. Reeve, 56 Wn. App. 18, 22-23, 781 P.2d 904 (1989). The liability threshold is the failure to exercise reasonable care in controlling the child's known dangerous proclivities. Sun Mountain Prod., Inc. v. Pierre, 84 Wn. App. 608, 614-15, 929 P.2d 494 (1997). Should that same conduct by the parent also result in injury to the child, the child will not be able to recover damages from the parent. This is not because no duty to supervise existed. It is because the standard of care

accompanying parents' duty to their child is different. To be liable to their children for a failure to supervise, parents must do more than fail to exercise ordinary care—their conduct must rise to the level of willful and wanton misconduct. This policy decision protects family autonomy and parental decision-making. See Zellmer, 164 Wn.2d at 159. No Washington case has stated that parents have no duty to their children to supervise them. The cases go no further than preventing the child from recovering for injuries caused by the lack of ordinary care in supervision, as opposed to willful or wanton misconduct.

We conclude that RCW 4.22.070(1) permits the trier of fact to allocate fault to parents with parental immunity. Here, the parties have agreed that Ronald did not commit willful or wanton misconduct. The allegation is that Ronald negligently supervised his children. Therefore, Ronald would have been immune from liability to Dillon and Derrick, had they made a claim against him. But, the jury could have found that Ronald's action or inaction caused harm to Derrick and/or Dillon. Therefore, we hold that trial court did not err in permitting the jury to allocate fault to Ronald.

Dillon and Derrick further argue that once the jury allocated fault to Ronald, the trial court should have found both defendants jointly and severally liable. They contend that parental immunity does not apply, because Ronald waived the defense by failing to raise it, and Paul did not have standing to assert it herself.

Derrick and Dillon never asserted that Ronald was liable to them. In their amended complaint, they stated only that Paul claimed that Ronald was concurrently negligent or engaged in willful misconduct that was a proximate cause

7

of their injuries. Derrick and Dillon themselves never argued that Ronald's failure to supervise was a proximate cause of the accident. Yet, only a plaintiff can assert that another person is liable to the plaintiff. Mailloux, 76 Wn. App. at 511. If a party other than the plaintiff proves that a person is a proximate cause of the plaintiff's damages, the person at fault is not liable to the plaintiff. Id. at 512. Because the plaintiffs here never argued that Ronald was liable to them, Ronald was not obliged to assert the parental immunity defense or risk waiving it by failing to do so. Ronald could not be held liable to the plaintiffs jointly or severally.

We hold that the trial court correctly interpreted RCW 4.22.070(1) by permitting the jury to allocate fault to Ronald and by entering judgment against only Paul.

II. Unavoidable Accident Defense

Dillon and Derrick also contend that the trial court erroneously allowed Paul to argue that the accident was unavoidable. They assert that the trial court erred in permitting hearsay evidence that supported this defense.[3] They claim that the

---

[3] Dillon and Derrick argue that the admission of the medical intake record which contained the sentence, "He is a usually healthy child who was playing on the front bumper of a raised 4x4 truck which was being driven by his father's girlfriend" was improper admission of hearsay. They argue that "[s]tanding alone the admission of this highly prejudicial, unsupportable hearsay evidence should be deemed as grounds for a new trial." Appellants sought to exclude it because it was being offered only to establish fault on the part of the children. No fault was allocated to the children. The statement appeared to support Paul's unavoidable accident defense in that she would not have been able to see him on her bumper from the driver's seat. But, the jury clearly rejected that theory and found her negligent. Dillon's claim for negligent infliction of emotional distress was based on witnessing his brother being run over by the vehicle, not by where his brother was positioned when he was run over. The factual basis for the negligence of the father was the lack of supervision. Whether Derrick was playing on the bumper or positioned in some other manner where he could be struck by the vehicle is of no

8

trial court erred in instructing the jury on unavoidable accidents. And, they argue that the trial court should have found Paul negligent as a matter of law.

But, the jury found Paul negligent. In doing so, it necessarily rejected Paul's unavoidable accident defense. Therefore, any error relating to this defense was harmless. See Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983) (noting that an error that does not affect the outcome of the trial is not grounds for reversal).

We are also unpersuaded by Dillon and Derrick's argument that this defense confused the jury about Dillon's negligent infliction of emotional distress claim. This defense went to the issues of Paul's negligence and proximate cause. One element of Dillon's claim was that the negligence of one of the defendants caused Derrick's injuries. As the jury found that Paul's negligence proximately caused Derrick's injuries, this element was met. Therefore, any error relating to Paul's unavoidable accident defense cannot have affected Dillon's claim.

We affirm.

WE CONCUR:

consequence to the fact that his father did not know where he was and was not adequately supervising him. Assuming without deciding the admission was erroneous, the appellants do not demonstrate prejudice.

9